**ESTATE OF Raymond J. MORGAN, Deceased, Appellant,**

v.

**NORTH STAR STEEL COMPANY, Appellee.**

No. 90–1628.

Supreme Court of Iowa.

April 26, 1995.

David Scieszinski, Wilton, for appellant.

Iris E. Muchmore and Matthew J. Petrzelka of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LARSON, Justice.

Raymond J. Morgan worked as a millwright for North Star Steel beginning in 1978. In August 1986, Morgan injured his knee and received workers' compensation benefits. He had surgery on his knee and was off work from August 16, 1986, until January 5, 1987. At that time, North Star placed Morgan on light duty work, and he eventually returned to his position as a millwright on April 28, 1987.

His knee injury remained a problem, however, and he had a second operation in September 1987. He was off work until January 3, 1988. When he returned, North Star again placed him on light duty. On February 8, 1988, Morgan's treating physician re-

ported that Morgan's restrictions previously imposed—no climbing of ladders or stairs—would have to be permanent. North Star continued to allow Morgan to perform temporary light duty jobs to accommodate his limitations. Meanwhile, other employees performed many of Morgan's duties.

When Morgan completed the temporary "light jobs," North Star concluded it could not further accommodate him. On June 17, 1988, North Star notified Morgan that he would be laid off effective June 20, but he would have all rights provided to him by the labor agreement with his union. Also, Morgan could bid on any posted job vacancies in the labor pool in which his job restrictions did not interfere.

The union contract provided that all job bids would be awarded first on the ability to perform the work and second on physical fitness for the job. The third criterion was the period of continuous service.

Morgan applied for four job openings, but North Star advised him that the requirements of each job would violate the permanent restrictions placed on him by his doctor. North Star encouraged Morgan to demonstrate that his restrictions would not disqualify him.

Morgan filed a complaint with the Iowa Civil Rights Commission in December 1988, and in April 1989, the commission issued a "right to sue" letter. *See* Iowa Code § 601A.16(2) (1989). (In the meantime, Morgan died of a heart ailment unrelated to this suit, and his estate was substituted as plaintiff.)

The district court concluded that North Star had terminated Morgan due to his disability but that it had a legitimate nondiscriminatory reason for the layoff. The court dismissed the petition. The estate filed a motion to expand the ruling under Iowa Rule of Civil Procedure 179(b). The district court denied the motion as untimely, and the court of appeals affirmed.

On further review, we vacated the court of appeals decision and reversed the district court's ruling. *Estate of Morgan v. North Star Steel Co.*, 484 N.W.2d 199, 200 (Iowa 1992). We held that, under rule 82(d), the

rule 179(b) motion was timely and should not have been dismissed. We remanded to the district court for disposition of the rule 179(b) motion and retained jurisdiction of the case in all other respects. Following remand, the district court denied the rule 179(b) motion, and the case now proceeds for final disposition in this court.

■ The issue is whether North Star discharged Morgan in violation of the disability discrimination provisions of Iowa Code section 601A.6(1)(a). Our review of a disability discrimination claim is at law, thus the district court's findings of fact are binding if supported by substantial evidence. *Boelman v. Manson State Bank*, 522 N.W.2d 73, 76 (Iowa 1994).

■ A plaintiff in a chapter 601A suit must establish that he (1) has a disability, (2) was qualified for the job, and (3) was discharged from his job because of his disability. *Boelman*, 522 N.W.2d at 81.

■ Applying this test, it is clear that Morgan's injury qualified as a disability. It was virtually impossible for him to do the extensive stair and ladder climbing required of a millwright. As the district court concluded, it is also clear that Morgan established the third element of the prima facie case, *i.e.*, that the discharge occurred because of his disability. *See id.* at 79.

■ The key issue, therefore, on appeal is whether Morgan established the second element of a prima facie case, *i.e.*, whether he was qualified for the position. *Id.* Under *Boelman*, Morgan must establish that, despite his disability, he was qualified to perform the job. He may prove that he was qualified by showing that "he could perform the essential functions of his job with or without accommodation." *Id.* at 81–82. If Morgan's ability to do his job depended on reasonable accommodation, then he must make a facial showing that reasonable accommodation was possible. *Id.* at 82. Only then does the burden shift to the employer to show that the suggested accommodation was unreasonable or would constitute an undue burden. *Id.*

The trial court found that Morgan was not qualified as a millwright and that reasonable accommodation was not possible. We believe the evidence is clear that Morgan could not have performed the essential duties of a millwright, even with reasonable accommodation. *See Halsey v. Coca–Cola Bottling Co. of MidAmerica, Inc.*, 410 N.W.2d 250, 253 (Iowa 1987) ("In considering the reasonableness of an employer's accommodation of an employee's disability, we must consider not only the disabled employee's needs but also the economic realities faced by the employer.").

The evidence showed that millwrights performed all of the mechanical work in the steel plant. The work of a millwright required climbing to considerable heights, sometimes 100 feet. The district court concluded that the installation of elevators to accommodate Morgan was not a possibility because of space and safety constraints.

In addition, many of the millwrights complained of the extra work they had to do to cover for Morgan's disability. *See Smith v. ADM Feed Corp.*, 456 N.W.2d 378, 386 (Iowa 1990) ("[A]ccommodation must be made by an employer only if it does not impinge on the rights of other employees or incur more than a de minimis cost to the employer.").

The district court found that there were no jobs available that Morgan could perform in view of his permanent restrictions. The "light jobs" to which Morgan was temporarily assigned were no longer available. These jobs had been provided to Morgan on a temporary basis until a final medical determination was available as to his prognosis.

We conclude that the plaintiff failed to establish the necessary elements of a prima facie case of disability discrimination, and that the district court was correct in dismissing the petition. We therefore affirm the court of appeals decision and the judgment of the district court.

**COURT OF APPEALS DECISION AND JUDGMENT OF DISTRICT COURT AFFIRMED.**