BARRIE WELSH, APPELLEE AND CROSS-APPELLANT, V. WILLIAM M. ANDERSON, APPELLANT AND CROSS-APPELLEE.

421 N.W.2d 426

Filed April 1, 1988.    No. 86-201.

Gary L. Hoffman and Michael A. Fortune of Erickson & Sederstrom, P.C., for appellant.

John F. Thomas of McGrath, North, O'Malley & Kratz, P.C., for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and BLUE, D.J.

FAHRNBRUCH, J.

A Douglas County jury awarded the plaintiff, Barrie Welsh, $75,000 primarily for head injuries she suffered in a two-car accident. In a special verdict, the jury found that 75 percent of Welsh's injuries could have been prevented had she been wearing a seatbelt at the time of the collision. The trial judge refused to reduce the damages award by the 75 percent because the judge found Welsh had no duty to wear a seatbelt. The defendant, William M. Anderson, appeals. We affirm.

Defendant's only assigned error is the trial court's failure to

reduce Welsh's damages award by 75 percent. The defendant contends that nonuse of an available seatbelt constitutes a failure by the injured plaintiff to mitigate her damages.

The accident around which this case revolves occurred in Omaha, Nebraska, on June 8, 1984, at approximately 10 p.m. Welsh was driving her 1978 Toyota eastbound on Dodge Street. Anderson, driving a 1984 Ford Mustang GT owned by his employer, Atchley Ford, was westbound on Dodge.

A witness to the accident testified that Anderson swerved north across three lanes of traffic, struck the curb, went up onto the grass at 87th and Dodge, lost control of his vehicle, spun back across three westbound lanes on Dodge and the turning lane, and went up over the median and directly into the path of Welsh's Toyota. The plaintiff's vehicle struck the driver's door on defendant's vehicle. Prior to losing control of his vehicle, Anderson was traveling in excess of 50 miles per hour, according to the evidence.

On impact, the plaintiff, who was not wearing a seatbelt, was thrown forward into the windshield of her car. Welsh injured the left side of her forehead. By time of trial, the injury had required three reconstructive surgeries and was likely to require at least two more surgical procedures. A reconstruction expert expected Welsh's face to be permanently scarred.

Welsh's petition in the district court claimed that Anderson was negligent in (1) failing to keep a proper lookout; (2) failing to keep his vehicle under reasonable control; (3) operating his vehicle left of the center; (4) operating his vehicle at an excessive rate of speed; and (5) driving his vehicle while intoxicated. Anderson's third amended answer admitted his negligence and claimed that Welsh's failure to wear her seatbelt constituted failure to mitigate her damages. After the third amended answer was filed, Anderson filed a motion in limine seeking to prevent proof before the jury of any intoxication on his part. Contrary to plaintiff's cross-appeal, this motion was properly granted, and the jury did not hear any prejudicial evidence about defendant's drinking. Neb. Rev. Stat. § 27-403 (Reissue 1985); *State v. Jacobs*, 226 Neb. 184, 410 N.W.2d 468 (1987); *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984).

The jury trial was held to determine the amount of damages for which Anderson was liable. Welsh presented evidence on the details of the accident and her condition following the event. There was evidence Welsh had past medical expenses of $6,719.51, lost wages of $182.50, and would have future medical expenses approximating $5,000, or nearly $12,000 out-of-pocket expenses. The jury verdict was for $75,000. Had the court permitted the 75-percent reduction, Welsh would receive $18,750.

Anderson called Dr. Donald Huelke as an expert witness. He testified how people are injured in motor vehicle accidents and how such injuries can be prevented through the use of seatbelts. It was his opinion that, had she worn a shoulder-lap seatbelt, Welsh would not have contacted the windshield and, therefore, Welsh would not have sustained the forehead injury necessitating reconstructive surgery.

Whether the doctrine of mitigation of damages applies to the use of seatbelts is a question of law. Regarding questions of law, this court has an obligation to reach its conclusion independent from the conclusion reached by a trial court. *In re Estate of Ritter,* 227 Neb. 641, 419 N.W.2d 521 (1988); *In re Estate of Walker,* 224 Neb. 812, 402 N.W.2d 251 (1987); *Knoell v. Huff,* 224 Neb. 90, 395 N.W.2d 749 (1986).

Clearly, Welsh had no statutory duty to wear her seatbelt. This accident occurred before passage of the Nebraska seatbelt law, which in part was later repealed by referendum. See Neb. Rev. Stat. § 39-6,103.04 (Cum. Supp. 1986 & Supp. 1987). The accident also occurred before the effective date of Neb. Rev. Stat. § 39-6,103.08 (Cum. Supp. 1986). That section permits the reduction of a plaintiff's damages award by up to 5 percent if the plaintiff was not wearing a seatbelt. Because the Legislature did not clearly evidence an intent that it apply retroactively, § 39-6,103.08 is not a factor in this case. *Moore v. Peterson,* 218 Neb. 615, 358 N.W.2d 193 (1984); *Wheelock & Manning OO Ranches, Inc. v. Heath,* 201 Neb. 835, 272 N.W.2d 768 (1978); *Brown v. Sullivan,* 195 Neb. 729, 240 N.W.2d 51 (1976). The only issue to be decided here is whether the failure to wear a seatbelt constitutes a violation of Welsh's duty to mitigate her damages.

Mitigation of damages is defined by Black's Law Dictionary 904 (5th ed. 1979), as follows:

> [The] [d]octrine of "mitigation of damages," sometimes called [the] doctrine of avoidable consequences, imposes on [an] injured party [the] duty to exercise reasonable diligence and ordinary care in attempting to minimize his damages *after injury has been inflicted* and care and diligence required of him is the same as that which would be used by [a] man of ordinary prudence under like circumstances.

(Emphasis supplied.) See, also, *Steinauer v. Sarpy County*, 217 Neb. 830, 353 N.W.2d 715 (1984); *Hurlbut v. Landgren*, 200 Neb. 413, 264 N.W.2d 174 (1978); *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983).

Whether the mitigation doctrine applies when an injured plaintiff was not wearing a seatbelt is a question of first impression in Nebraska. However, several other states have considered this issue.

New York leads those states deciding that not wearing an available seatbelt constitutes failure to mitigate damages. *Spier v. Barker*, 35 N.Y.2d 444, 323 N.E.2d 164, 363 N.Y.S.2d 916 (1974). Arizona, New Jersey, and Florida have joined New York in holding that a damages award may be reduced to reflect additional or enhanced injuries. *Law v. Superior Court of the State of Arizona*, No. CV-86-0607-PR (Ariz. Jan. 12, 1988) (1988 WESTLAW 1624); *Dunn v. Durso*, 219 N.J. Super. 383, 530 A.2d 387 (1986); *Insurance Co. of North America v. Pasakarnis*, 451 So. 2d 447 (Fla. 1984).

However, a clear majority of states considering the issue have decided that the mitigation doctrine does not apply in seatbelt cases. *Hagwood v. Odom*, _____ N.C. App. _____, 364 S.E.2d 190 (1988); *Hillier v. Lamborn*, 740 P.2d 300 (Utah App. 1987); *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986); *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986); *Schaeffer v. Burdette*, 33 Ohio Misc. 2d 12, 514 N.E.2d 952 (1986); *Clarkson v. Wright*, 108 Ill. 2d 129, 483 N.E.2d 268 (1985); *Thomas v. Henson*, 102 N.M. 417, 696 P.2d 1010 (1984), *modified* 102 N.M. 326, 695 P.2d 476 (1985); *State v. Ingram*, 427 N.E.2d 444 (Ind. 1981); *Daly v. General Motors*

*Corp.*, 20 Cal. 3d 725, 575 P.2d 1162, 144 Cal. Rptr. 380 (1978); *McCord v. Green*, 362 A.2d 720 (D.C. 1976); *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48 (Okla. 1976); *Fischer v. Moore*, 183 Colo. 392, 517 P.2d 458 (1973); *Britton v. Doehring*, 286 Ala. 498, 242 So. 2d 666 (1970).

The District of Columbia considered the seatbelt issue in *McCord v. Green, supra*, a case which is factually similar to the present case. The District of Columbia court considered New York's holding in *Spier v. Barker*, saying:

> With all deference to the New York Court of Appeals, however, we do not deem this rule applicable to cases like *Spier* or the instant one, for it assumes that the trier of fact may attach significance to purely fortuitous events in which the chain of causation may be discerned only by hindsight. The doctrine of avoidable consequences . . . comes into play only after the defendant has committed the wrongful act but at a time when plaintiff still has an opportunity to avoid the consequences in whole or in part. Surely the situation before us does not fall into that category . . . .

362 A.2d at 725. The District of Columbia court equated the doctrine of avoidable consequences and the duty to mitigate damages. *Id.*

*State v. Ingram, supra*, is an Indiana Supreme Court case in which the court held that a defendant cannot raise the mitigation of damages issue where the plaintiff failed to wear a seatbelt. The court stated:

> [T]he doctrine [of mitigation of damages] cannot logically encompass the so-called "seat belt defense." The act of buckling or not buckling a seat belt is an act the injured party must perform before the injury causing the act occurs. . . . *[T]he question of whether mitigation of damages has occurred looks to the acts of the injured party only after the injury has occurred.*

(Emphasis supplied.) 427 N.E.2d at 448.

The Court of Appeals of North Carolina recently stated that *"the duty to minimize damages arises only after the negligent act of defendant.* A plaintiff's failure to fasten his seat belt necessarily occurs *before* defendant's allegedly negligent act

and therefore is not consistent with any burden on plaintiff to minimize damages." (Emphasis supplied.) *Hagwood v. Odom, supra* at _____, 364 S.E.2d at 192.

We agree with the reasoning and the conclusions of the majority of courts above cited. We, therefore, hold that the doctrine of mitigation applies only to postevent occurrences. Failure to wear a seatbelt is not a postevent occurrence. Defendant is not entitled to have Welsh's damages reduced.

In view of our holdings, the balance of appellee's cross-appeal is moot. The verdict of the district court is affirmed.

AFFIRMED.