990 F.2d 1075
 In re FAIRFIELD COMMUNITIES, INC., Debtor.
TENNESSEE ASPHALT COMPANY, INC., and Bill Hopper d/b/a
Hopper's Excavating, Appellants,
v.
FAIRFIELD COMMUNITIES, INC., Fairfield Glade Community Club
(Substituted for Third National Bank of East
Tennessee), and First National Bank of
Boston, Appellees.
 No. 92-2693.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1993.
Decided April 13, 1993.
 
 1
 Joyce Babin, Little Rock, AR, for Tennessee Asphalt, and Dale Bohannon of Cookeville, TN, for appellant Hopper (Greg Kitterman, Little Rock, AR, and Beecher Bartlett, Jr., Knoxville, TN, on the briefs), for appellants.
 
 
 2
 Thomas Dickenson, Knoxville, TN, argued (Ben Arnold, Little Rock, AR, on the brief), for appellee.
 
 
 3
 Before WOLLMAN, BEAM, Circuit Judges, and NANGLE, Senior District Judge.*
 
 
 4
 NANGLE, Senior District Judge.
 
 
 5
 Tennessee Asphalt Company, Inc. (Tennessee Asphalt) and Bill Hopper d/b/a Hopper's Excavating (Hopper) appeal from the decision of the district court denying their mechanics' and materialmen's liens for construction work performed on a golf course. We reverse.
 
 I.
 
 6
 Heatherhurst Third Nine is a nine hole addition to the original 18 holes of the Heatherhurst Golf Course located in Fairfield Glade, a planned community owned by Fairfield Communities, Inc. (FCI) and located in Tennessee. On August 31, 1989, FCI, Third National Bank of East Tennessee, and Fairfield Glade Community Club (FGCC) entered into a purchase contract requiring FGCC to purchase the Heatherhurst Third Nine once construction had been completed by FCI.
 
 
 7
 Hopper and Tennessee Asphalt performed work on the Heatherhurst Third Nine. Specifically, Hopper cleared and built a haul road, built a silt pond, cut a drainage ditch, and cleared land on the Third Nine. Hopper received payment for these projects. Hopper also completed work on the greens, which required him to haul in four hundred tons of sand and gravel for each green and use heavy equipment to reshape the landscape. Additionally, he installed an irrigation system comprised of 23,000 feet of irrigation pipe, electrical control wires, and computerized control boxes. To successfully complete this work, Hopper used bulldozers, front-end loaders, dump trucks, excavating equipment, and a large "van trailer."
 
 
 8
 Hopper did not receive payment for shaping the greens and installing an irrigation system, so he recorded a "Notice of Intention to Claim a Lien" in the amount of $76,019,38 on September 28, 1990. He subsequently received checks from FCI totalling $81,916.60, and released his original lien on October 1, 1990. After the checks were returned for insufficient funds, Hopper filed another lien in the amount of $81,924.60 against the Heatherhurst Third Nine on December 4, 1990.
 
 
 9
 Tennessee Asphalt based, paved, and curbed the golf cart paths at the Heatherhurst Third Nine. This work required Tennessee Asphalt to place approximately four inches of stone base on existing dirt subgrade graded by Hopper, put down an extruded asphalt curb, and place a two inch layer of asphalt on the top. These cart paths were eight feet wide, ran the entire distance of the Third Nine, and included some paths which linked the existing course with the addition. Tennessee Asphalt's work required the use of a motor grader, base roller, asphalt paving machine, two asphalt rollers, a service truck, two pick-ups, a dump truck, and twelve to fourteen employees. On November 30, 1990, it filed a Notice of Lien in the amount of $63,548.92.
 
 
 10
 On October 3, 1990, FCI filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Arkansas. After a trial to determine the validity, priority, and extent of liens on the Heatherhurst Third Nine, the bankruptcy court, applying Tennessee law, held that the claims of Hopper and Tennessee Asphalt are not lienable. Its opinion rested on the two principles: A golf course was not among the "improvements" contained in the applicable Tennessee statute, and a golf course was not a building or structure to which a lien would attach. The district court summarily affirmed the bankruptcy court's judgment.
 
 II.
 
 11
 Tennessee Asphalt and Hopper argue that they are entitled to mechanics' and materialmen's liens under Tenn.Code Ann. § 66-11-102 since the current version of Tenn.Code Ann. § 66-11-101(7) supersedes prior case law. We agree.
 
 
 12
 Tenn.Code Ann. § 66-11-102(a) provides in pertinent part as follows:
 
 
 13
 There shall be a lien upon any lot of ground or tract of land upon which a house or structure has been erected, demolished, altered, or repaired, or for fixtures or machinery furnished or erected, or improvements made, by special contract with the owner or his agent, in favor of the contractor, mechanic, laborer, founder or machinist, who does the work or any part of the work, or furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery, or material, and in favor or all persons who do any portion of the work of furnish any portion of the materials for such building ...
 
 
 14
 Appellees claim that this statute precludes Tennessee Asphalt and Hopper from holding valid liens on the Heatherhurst Third Nine since section 66-11-102(a) requires the existence of a house or structure on the improved property in order to grant a lien. Three Tennessee cases have interpreted the structure requirement.
 
 
 15
 In Nanz v. Cumberland Gap Park Co., 103 Tenn. 299, 52 S.W. 999 (1899), florists furnished and planted flowers and shrubbery, built a rustic bridge, and graded the walls on the premises. The Tennessee Supreme Court, analyzing the predecessor to section 66-11-102,[1] held that the florists were not entitled to a lien. Id. at 307, 52 S.W. 999. Although the florists had improved the property, they placed "no erections, structures, buildings, fixtures, or machinery" on the property as contemplated by the statute. Id. at 306, 52 S.W. 999.
 
 
 16
 In Pillow v. Kelly, 155 Tenn. 597, 296 S.W. 11 (1927), Pillow bored a well and installed piping and a pump. Again applying the predecessor to section 66-11-102, the Tennessee court held that since no building or structure existed on the land, Pillow was not entitled to a lien. Id. at 600, 296 S.W. 11. Accordingly, "[t]he lien is not given for improvements or material unless the improvement bears some relation to a structure or building, or is appurtenant to a structure or building on the land." Id.
 
 
 17
 Finally, in Britt v. McClendon, 213 Tenn. 232, 373 S.W.2d 457 (1963), the contractor constructed a road leading to a residence. Relying on Nanz, Pillow, and Tenn.Code Ann. §§ 64-1101 and 64-1102, the Court held that the contractor was not entitled to a lien. First, roads and drives were not included in the definition of improvements contained in section 64-1101. Id. 373 S.W.2d at 458. Second, Nanz and Pillow restricted liens to things bearing some relation to a structure or building. Id. 373 S.W.2d at 459. Thus, the Court refused to "extend" the lien laws, and deferred to the legislature. Id. at 459.
 
 
 18
 The Tennessee legislature responded to Nanz, Pillow, and Britt. The current definition of "improvement" contained in section 66-11-101(7) reads as follows:
 
 
 19
 "Improvement" means any building, structure, erection, alteration, demolition, excavation, or any part thereof, including ornamental shrubbery and trees, driveways, and private roadways, on real property for it permanent benefit, whether there is existing at the time of such work, any building, structure or other improvements upon the real property.
 
 
 20
 As can be seen from the text of current section 66-11-101(7), the addition by the legislature of "ornamental shrubbery and trees," "excavation," and "whether there is existing at the time of such work, any building, structure ..." counters Nanz, Pillow, and Britt, respectively.
 
 
 21
 Appellees assert that the removal of the structure requirement in section 66-11-101(7) does not affect the structure requirement contained in section 66-11-102. Despite the seemingly contradictory language, appellees attempt to reconcile the two statutes in favor of a building or structure requirement: A mechanic's lien can only be given for work performed before a building or structure is placed upon the land, if such building or structure is thereafter constructed as part of the same project, or for work performed or materials furnished during or after a building is erected. We are unwilling to ignore the plain language and legislative history of section 66-11-101(7) to achieve the strained reading suggested by appellees.
 
 
 22
 In the case at bar, the defining statute removes the building or structure requirement for an improvement, while the granting statute contains such a requirement. When statutory interpretation is left open to dispute, the Court may properly look to the legislative history of the statute for guidance. Chapman v. Sullivan County, 608 S.W.2d 580 (Tenn.1980) (relying on House debates to determine definition of term contained in several statutes). See also Tennessee Manufactured Housing Assoc. v. Metropolitan Gov't of Nashville, 798 S.W.2d 254 (Tenn.Ct.App.1990); Computer Shoppe, Inc. v. State, 780 S.W.2d 729 (Tenn.Ct.App.1989).
 
 
 23
 Floor debates surrounding the enactment of the 1968 amendment which removed the structure requirement from section 66-11-101(7) contain the following statements from the bill's sponsor:
 
 
 24
 ... In 1965, the term "improvement" was amended so as to include all metal ironworks, shrubbery, excavation, and other matters that had not been previously considered in materialmen and mechanicmen's [sic] liens. These liens are very narrowly construed by the courts. I think everyone at that time thought that all excavation, since it was included in there, and all matters similar to this would be thereby included in the lien. However, since the Legislature met, there has been one county I know where ... a Chancery Court Judge ruled that without construction being present, there was no way that you could have a lien. What happened in this particular case was an excavator, or a road grader, cut roads into a subdivision. It was just a field out there at the time. And at the time he filed his lien ... within the 90-day period, he was not able to make it attach because they said there was no structure built ... So, it doesn't seem particularly fair; and due to this, this matter is strictly for clearing it up ...
 
 
 25
 House Debate, April 3, 1968 (statements of Rep. Blank). These statements indicate that the legislature intended to grant liens to contractors who performed lienable work on lands where no buildings or structures existed. Accordingly, Hopper and Tennessee Asphalt can hold valid liens for improvements on the realty constituting the Heatherhurst Third Nine despite the lack of a building or structure.
 
 
 26
 Under the definition contained in section 66-11-101(7), work performed by Hopper and Tennessee Asphalt constituted improvements to the real property. Hopper altered the land by hauling in 400 tons of sand and gravel to shape each green. Tennessee Asphalt, using some of the land previously excavated by Hopper, created cart paths, the equivalent of private roadways. This work undoubtedly improved the realty and enured to its permanent benefit.
 
 
 27
 The judgment of the district court must be reversed. The plain language of section 66-11-101(7) specifically removes any structure requirement for a lienable improvement. Additionally, the legislature, by its 1965 and 1968 amendments to section 66-11-101(7), attempted to reverse the overly narrow application of the state lien statutes by removing any structure requirement for the grant of a mechanics' or materialmen's lien. Since the work performed by Hopper and Tennessee Asphalt constituted lienable improvements as contemplated by the applicable statutes, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 Shannon's Code § 3531, the predecessor to Tenn.Code Ann. § 66-11-102, provided as follows:
 There shall be a lien upon any lot of ground or tract of land upon which a house has been constructed, built, or repaired, or fixtures or machinery furnished or erected, or improvements made, by special contract with the owner or his agent, in favor of the mechanic or undertaker, founder or machinist, who does the work or any part of the work or furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery, or material ...